JEFF JAY HANCOCK V-49474
C.V.S.P.    A.S.U. 133L
P.O. BOX 2349
BLYTHE, CA. 92226

EXECUTED ON MARCH 20, 2008

*Jeff Jay Hancock* (signature)

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
MAR 24 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

JEFF JAY HANCOCK

       PETITIONER

JAMES D. HARTLEY, Acting Warden

       RESPONDENT

CASE NO. C07-04469 CW

DENIAL AND EXCEPTION TO THE RETURN TO THE ORDER TO SHOW CAUSE

Petitioner hereby enters his denial and exception to the Return to the Order to Show Cause in the above-entitled action, and states:

## EXCEPTION

Respondent has failed to set forth sufficient facts or law to show cause why the relief prayed for in the petition should not be granted.

## DENIAL

The Attorney General has exceeded his filing deadlines of 2/24/08 and 3/15/08 set by the court. Since Petitioner has yet to receive a response I've chosen to deny each and every allegation made by the Attorney General sight unseen. The allegations of the petition are incorporated in the Denial, as well as facts and arguments previously raised, with cases and case citings

☾ In re: Ground II Failure to Disclose PC 1054.1(b)

5/19/04 During Prosecutor Jim Demertzis' opening statement he states, "Not only did the defendant tell Peter Craven that he stabbed him"... 9:00 a.m. (R.P.T. of Proceedings pg. 5 lns. 15, 16)

5/19/04 During P.M. trial testimony Prosecution witness Peter Craven testifies that defendant (Petitioner) stated the night of the alleged crime, while at the scene holding a knife in his hand, "I stabbed him this deep." (RT Vol. II pg. 138 lns. 23, 24)

Once Prosecution witness Peter Craven's testimony was completed, Defense Attorney Eben Kurtzman motioned for Mistrial and cited PC 1054.1(b) as being violated by Prosecution RT Vol. II pg. 146 lns. 14-17).

5/20/04 The defense's Mistrial motion was heard by Judge John Garibaldi. During the Prosecution's ☾ response he states, "Defendant's response to a question from Mr. Craven at the crime scene, which is nonverbal but rather a demonstration, would be tantamount to a statement" (RT Vol. III lns. 16-18). RT Vol. II pg. 192 Moments later the Prosecution states, "I didn't flesh out how much of a statement it was, and I did not mention to defense counsel that this demonstration was made." (RT Vol. III pg. 193 lns. 13-15.) Again, this allegedly was a demonstration, made by the defendant with a knife in hand, combined with the statement, "I stabbed him this deep," while indicating the depth to the Prosecution witness Peter Craven. Prosecution comments the following day, "I realize it's my duty to turn that over to defense prior to the witness testifying, and in the course of the trial it slipped my mind" RT Vol. III ☾ lns. 16-18 "I didn't flesh out how much of a statement it was." RT Vol. III pg. 193 lns. 13, 14. Petitioner had yet to testify, and believes had he known of this potential testimony could have stopped proceedings and received a lesser sentence.

```
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                 SANTA CLARA COUNTY JUDICIAL DISTRICT

 3                          SUNNYVALE FACILITY

 4                        DEPARTMENT NUMBER 81

 5            BEFORE THE HONORABLE JOHN J. GARIBALDI, JUDGE

 6

 7                              ---oOo---

 8   THE PEOPLE OF THE STATE     )
     OF CALIFORNIA,              )
 9                               )
              Plaintiff,         )
10                               )  CASE NUMBER:  EE302496
         -vs-                    )
11                               )
     JEFF JAY HANCOCK,           )
12                               )
              Defendant.         )
13   _____)

14

15        REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS

16                      (Opening Statements)

17                         May 19, 2004
                            9:00 a.m.
18

19

20

21

22
     A P P E A R A N C E S:
23

24   FOR THE PEOPLE:           JIM DEMERTZIS
                               DEPUTY DISTRICT ATTORNEY
25
     FOR THE DEFENDANT:        EBEN KURTZMAN
26                             ATTORNEY AT LAW

27   OFFICIAL COURT REPORTER:  CARLA GOMEZ, CSR, RMR
                               LICENSE NO. C-5303
28
```

```
 1   Sunnyvale, California              May 19, 2004
     Department 81                      9:00 a.m.
 2

 3                     **PROCEEDINGS:**

 4        THE COURT:  Mr. Demertzis, you may deliver your

 5   opening statement.

 6        MR. DEMERTZIS:  Thank you, your Honor.

 7        In this case the defendant stabbed his friend in the

 8   back, literally.  The defendant went to his kitchen, and he

 9   got a steak knife with a serrated edge and a

10   four-and-a-half-inch blade, and he went outside to where his

11   friend was laying on the concrete, after being beaten by the

12   defendant, and he buried that blade in his friend's back,

13   all the way up to the handle.  And for that he's been

14   charged with assault with a deadly weapon.

15        This stage of the trial is opening statement, as his

16   Honor just told you, and the idea is to give you a preview

17   of the evidence in this case and how we will proceed during

18   this trial.  The defense may or may not give an opening

19   statement.  The defense has no burden.  The burden rests

20   entirely with the People to bring forth enough evidence to

21   prove the one charge in this case beyond a reasonable doubt.

22        What I'm going to do so is I'm going to tell you the

23   story about this case, what the evidence will show.  And, by

24   the way, evidence is what you hear from witnesses or what

25   you see in the form of photographs or charts or any other

26   exhibit that his Honor admits into Evidence.

27        Whatever has been admitted into Evidence and whatever

28   you hear from witnesses will go back with you into the jury
```

1  deliberation room, and that's what you'll rely on when you
2  fulfill your oath to apply the facts to the law and
3  rendering your verdict.
4          After I go through the story, I want to talk about the
5  law in this case. It's one count. It's simple. There's
6  two additional allegations which I'll discuss. One is that
7  the defendant personally used a deadly or dangerous weapon,
8  and when you hear the evidence that will be clear to you.
9          The other allegation is that the defendant inflicted
10 great bodily injury, and you'll hear from a doctor who will
11 speak to that issue. But the only count is Penal Code
12 Section 245(a)(1), and I'll show it to you in a moment,
13 assault with a deadly weapon.
14         At the end of the trial I'll speak to you one more
15 time at closing argument. I'll give you the initial closing
16 argument, and the defense will speak to you, and then I'll
17 give rebuttal, because the People have the burden. After
18 that the case will go to you.
19         So what's the evidence going to be? What's the story
20 of this case? Okay. On August 7th of last year the
21 defendant and his drinking buddy, the victim -- the victim's
22 name is Craig Davis. He's the first witness you're going to
23 hear from a little later this morning.
24         The defendant and his drinking buddy were at Fair Oaks
25 Park here in Sunnyvale. They were drinking. And they both
26 got drunk, because they drink a lot. And often. The victim
27 left the park and went back to the defendant's apartment.
28 It's on Johanna Drive here in Sunnyvale, Apartment Number 7.

1   Actually, the victim had been staying with the defendant for
2   some time.  There was some tension with that arrangement.
3   You'll hear about that.
4       On this particular day, August 7th, the victim goes
5   back to the defendant's apartment and he falls asleep,
6   passes out, ends up outside the door of defendant's
7   apartment.  Mr. Hancock comes home, finds the defendant
8   there, and he's upset.  He proceeds to punch and kick the
9   victim several times.
10      You'll see photographs of the victim's injuries, of
11  the injuries to the victim's face, of bruises to the
12  victim's body.  You'll see photographs of the stabbing.
13      After that beating the defendant goes into his
14  apartment, and he gets the knife, and he comes back out and
15  he stabs the victim.
16      Sometime after that a mutual friend of theirs comes to
17  the victim's assistance and brings him in the apartment, and
18  he's trying to clean him up.  While that's going on, another
19  resident of the apartment complex stops by.  His name is
20  Peter Craven.  That's the second witness you'll hear from.
21      Peter Craven will describe to you what he saw, what he
22  talked about with the victim and with the defendant, what
23  the defendant said about what had just happened.  His
24  testimony won't be very long.
25      After Mr. Craven testifies, you'll hear from Officer
26  Kim, who talked to the different people at the scene.  He'll
27  tell you what he saw.  He'll tell you the statements that
28  were made to him.

1        After Officer Kim you'll hear from Officer Zarriello,
2   another officer that was at the scene, who will give you
3   another piece of the picture that happened.  His testimony
4   will be very short.  And then you'll hear from Dr. Greg
5   Gilbert, who treated the victim at Stanford Emergency Room.
6   It's close, so that's where they took him.
7        We'll end with Officer Andrew -- I'm sorry, Officer
8   Craig Anderson.  He'll tell you about the interview he
9   conducted of the defendant.  I'm not going into great detail
10  here, because there really isn't a lot of detail to go into.
11       This is a stabbing that should have never happened.
12  You'll hear the story from the witnesses.  What I'm telling
13  you right now is not evidence; I'm just giving you a
14  preview.
15       Not only did the defendant tell Peter Craven that he
16  stabbed the victim, but the defendant in the interview with
17  Officer Anderson confessed to stabbing the victim.  Now,
18  unless some of you think that maybe the police officer is
19  making it up, we have an audio tape of the interview, and
20  you'll hear in the defendant's own voice his confession to
21  the stabbing.
22       During the jury selection process there was some
23  mention of why we're here and who's responsible for being
24  here.  And I'll just remind you of your oath to apply the
25  facts to the law and not concern yourselves with what
26  brought us to this point.
27       At the end of the evidence and at the end of my
28  closing argument I'm going to ask you to return a verdict of

1  guilty as to the one count of assault with a deadly weapon.
2  Let me show you quickly so you'll have an idea what to look
3  for when you're hearing evidence.
4           MR. KURTZMAN: May I stand up for this? I can't
5  see through Mr. Demertzis.
6           THE COURT: Of course.
7           MR. DEMERTZIS: When I show you photographs with
8  this projector, I'll dim the lights so you can see them
9  better, but I'm about to sit down, so for right now I'm
10 assuming you all can see this, and I'll tell you that's the
11 one count, Penal Code Section 245, and there's two elements.
12 Elements is what the prosecution has to prove. I don't know
13 what other word to use. The two elements.
14           The first one is a person was assaulted. Later on in
15 closing argument I'll define what assault is. It's got a
16 legal definition. It's close, though, to what you think
17 assault is, but there's a few points you may not know, such
18 as no injury need be inflicted to commit an assault.
19          In this case in fact there was injury, which we'll
20 talk about later. But that's one thing about the legal
21 definition you might not be aware. We'll talk about that in
22 closing argument. That's one element.
23          The second element is the assault was committed with a
24 deadly weapon. And I don't think I'll have to spend too
25 much time at the end of this case arguing that a knife is a
26 deadly weapon.
27          That's the law in this case. That's what you'll apply
28 the facts to. As I said, the other two allegations that

1  you'll have to make decisions about are, one, was a deadly
2  weapon personally used by the defendant; and two, was it
3  great bodily injury. And I'll give you the legal
4  definitions of that during closing argument.
5      I appreciate your attention at this stage. I'll talk
6  to you again at the end, and I'll ask you to return verdicts
7  of guilty. Thank you.
8      THE COURT: Mr. Kurtzman, do you wish to deliver
9  an opening statement at this time?
10     MR. KURTZMAN: Yes, please. Thank you, your
11 Honor. Good morning, Ladies and Gentlemen. Mr. Hancock and
12 I would like to thank you for taking your time to be here.
13 I know not all of you are thrilled with spending a couple of
14 days with us, and we do appreciate your time and your
15 attention.
16     As Mr. Demertzis said, nothing that he and I are about
17 to say -- and what I'm about to say is not evidence. This
18 is an outline of what the evidence will show. And the one
19 thing I would ask is that you remember what the evidence
20 actually is. And it's important to disregard anything that
21 either of us say in our opening or closing statement that's
22 not in the evidence.
23     Craig Davis and Jeff Hancock were at Jeff's house.
24 Craig had been staying there. They got into a fight. The
25 fight escalated. Mr. Hancock defended himself. And it is
26 that simple.
27     Along with the instructions on what assault with a
28 deadly weapon is, you'll be given instructions on what

1  self-defense is.  And that's the issue in this case.  The
2  fight escalated; Mr. Hancock defended himself.  And that's
3  the evidence; all the evidence comes in.
4     Mr. Demertzis will show the evidence that there was an
5  assault with a deadly weapon, he has to, that there was a
6  knife involved.  That Mr. Davis got stabbed, or cut, is not
7  being disputed.  The question is whether or not it was
8  self-defense.
9     So as the evidence comes in, I'll ask you to focus on
10 that evidence, because that's really what you're going to
11 have to decide. And it is that simple.  Thank you very
12 much.

---oOo---

```
 1
 2
 3    STATE OF CALIFORNIA   )
 4    COUNTY OF SANTA CLARA )
 5
 6
 7
 8            I, CARLA GOMEZ, OFFICIAL COURT REPORTER OF THE
 9    SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SANTA
10    CLARA, DO HEREBY CERTIFY THAT THE FOREGOING IS THE OFFICIAL
11    TRANSCRIPT OF THE PROCEEDINGS HAD IN SAID COURT IN THE
12    MATTER OF PEOPLE VS. JEFF JAY HANCOCK, THAT SAID TRANSCRIPT
13    IS A TRUE, FULL AND CORRECT STATEMENT OF SAID PROCEEDINGS,
14    TO THE BEST OF MY ABILITY.
15            I FURTHER CERTIFY THAT I HAVE COMPLIED WITH
16    CCP 237(A)(2) IN THAT ALL PERSONAL JUROR IDENTIFYING
17    INFORMATION HAS BEEN REDACTED, IF APPLICABLE.
18
19
20
21
22
23
24    DATED:_____        _____
                                           CARLA GOMEZ, C.S.R.
25                                         LICENSE NUMBER C-5303
26
27
28
```

```
 1    A    YES.
 2    Q    AND CAME BACK WITH A STEAK KNIFE?
 3    A    IT WAS EITHER A STEAK KNIFE OR A PARING KNIFE,
 4    SOMETHING ABOUT THAT SIZE.
 5    Q    DESCRIBE IT IF YOU CAN.
 6    A    BASICALLY THE LENGTH AND SIZE AND SHAPE OF THE STEAK
 7    KNIFE, BUT I DON'T RECALL ANY SERRATIONS ON IT.
 8    Q    DO YOU RECALL WHAT COLOR THE HANDLE WAS?
 9    A    WOODEN.
10    Q    AND THE BLADE, APPROXIMATELY HOW LONG?
11    A    ROUGHLY SIX INCHES, MAYBE A LITTLE LONGER.
12    Q    THE DEFENDANT COMES BACK FROM THE KITCHEN HOLDING THIS
13    KNIFE, AND DOES HE SAY ANYTHING ABOUT THE KNIFE?
14    A    HE HELD IT IN HIS HAND WITH HIS THUMB -- BRINGING HIS
15    THUMB DOWN TO INDICATE HOW DEEP HE HAD STABBED HIM.  THAT
16    WAS MY PRIMARY CONCERN, WAS HOW DEEPLY HE HAD BEEN STABBED.
17    Q    YOUR UNDERSTANDING OF THE GESTURE THE DEFENDANT MADE
18    WAS THAT THE DEFENDANT HAD STABBED HIM THREE OR FOUR INCHES
19    DEEP?
20    A    THAT'S CORRECT.
21    Q    DID THE DEFENDANT SAY ANYTHING IN ADDITION TO MAKING
22    THIS GESTURE?
23    A    YES.  HOLDING THE KNIFE HE SAID, "I STABBED HIM THIS
24    DEEP."
25    Q    FOR THE RECORD YOU'RE HOLDING YOUR RIGHT HAND OUT AND
26    THEN YOUR RIGHT THUMB IS EXTENDED.
27    A    YES.
28    Q    DID THE DEFENDANT DO ANYTHING -- WAS THE DEFENDANT
```

1              THE COURT: YOU'RE EXCUSED. THANK YOU FOR COMING
2      IN. APPROACH THE BENCH ON THE PRIOR WITNESS.
3              (DISCUSSION OFF THE RECORD.)
4              THE COURT: WE'LL TAKE A RECESS AT THIS TIME. THE
5      NEXT WITNESS WILL TAKE AT LEAST HALF AN HOUR, SO THIS IS A
6      BETTER TIME TO TAKE A RECESS. REMEMBER THE ADMONITION,
7      LADIES AND GENTLEMEN.
8              (RECESS.)
9              THE COURT: FOR THE RECORD THE COURT CALLS THE
10     MATTER OF PEOPLE VERSUS HANCOCK. MR. KURTZMAN, YOU WISH TO
11     PUT SOMETHING ON THE RECORD OUTSIDE OF THE PRESENCE OF THE
12     JURY BEFORE THE JURY IS RECALLED HERE. WHAT WOULD THAT BE,
13     MR. KURTZMAN?
14             MR. KURTZMAN: YOUR HONOR, AT THIS POINT, AS A
15     MATTER TO PRESERVE THE RECORD, GIVEN I'M NOT SURE OF WHICH
16     POINT THE MOTION BECOMES UNTIMELY, I FEEL I HAVE TO MAKE A
17     MOTION UNDER 1054.1(B) AND MOVE FOR A MISTRIAL.
18             1054.1(B) OF THE PENAL CODE IS THE CODE SECTION THAT
19     STATES THAT THE PEOPLE HAVE A DUTY TO DISCLOSE ALL
20     STATEMENTS MADE BY THE DEFENDANT TO THE DEFENSE. IT'S CLEAR
21     FROM THE TESTIMONY WE JUST HEARD BEFORE THE RECESS, AND I
22     NEEDED TO RESEARCH THIS BEFORE I COULD BRING THE MOTION,
23     THAT THE PEOPLE HAD AT LEAST A DAY'S NOTICE OF MR. CRAVEN'S
24     TESTIMONY.
25             THE DEFENSE HAD NO NOTICE OF WHAT IS OBVIOUSLY VERY
26     DRAMATIC AND SIGNIFICANT TESTIMONY, IN THAT IT IS ANOTHER
27     CONFESSION ALLEGEDLY MADE BY MR. HANCOCK. THE CONVERSATION
28     I'M CURRENTLY HAVING WITH MR. HANCOCK IS WHETHER OR NOT HE

```
 1  SUBMIT IT.
 2          THE COURT: MR. DEMERTZIS, WHAT WOULD YOU LIKE TO
 3  SAY ABOUT THIS?
 4          MR. DEMERTZIS: YOUR HONOR, THE NIGHT BEFORE
 5  MR. CRAVEN CAME TO COURT AND TESTIFIED I CALLED HIM TO GIVE
 6  HIM A SPECIFIC ARRIVAL TIME FOR COURT. IN THE COURSE OF
 7  THAT CONVERSATION I ASKED HIM IS THERE -- WAS THERE ANYONE
 8  ELSE AT THE SCENE OR IS THERE ANYTHING ELSE THAT I NEED TO
 9  LOOK INTO THAT'S NOT IN THE POLICE REPORT. AND HE WENT ON
10  TO DESCRIBE THE DEFENDANT MAKING A DEMONSTRATION WITH THE
11  KNIFE.
12          NOW, I STOPPED MR. CRAVEN, BECAUSE I DIDN'T WANT TO
13  MAKE MYSELF A WITNESS IN THE TRIAL, AND I DIDN'T HAVE AN
14  OPPORTUNITY TO HAVE AN INVESTIGATOR GO AND TALK TO
15  MR. CRAVEN. AS FOR THIS STATEMENT BY THE DEFENDANT I WOULD
16  AGREE THAT THE DEFENDANT'S RESPONSE TO A QUESTION FROM
17  MR. CRAVEN AT THE CRIME SCENE, WHICH IS NONVERBAL BUT RATHER
18  A DEMONSTRATION, WOULD BE TANTAMOUNT TO A STATEMENT.
19          ASSUMING IT'S A STATEMENT, THE PENAL CODE PROVIDES
20  THOSE STATEMENTS SHOULD BE TURNED OVER TO THE DEFENSE IN A
21  TIMELY MANNER. WHILE I DID NOT CALL DEFENSE COUNSEL AT 9:00
22  AT NIGHT TO MAKE HIM AWARE OF THOSE STATEMENTS, AND WHEN WE
23  GOT TO COURT THAT MORNING --
24          THE COURT: YESTERDAY MORNING.
25          MR. DEMERTZIS: -- YESTERDAY MORNING, WE WERE
26  FINISHING UP WITH A WITNESS AND TALKED ABOUT SCHEDULES, AND
27  WE WERE GOING TO PUT ON MR. CRAVEN. FRANKLY, IT DID NOT
28  OCCUR TO ME TO DISCUSS THIS POTENTIAL STATEMENT THE
```

1  DEFENDANT MADE AT THE CRIME SCENE PRIOR TO CALLING
2  MR. CRAVEN. IN TERMS OF PREJUDICE TO THE DEFENDANT --
3           THE COURT: IT'S, FOR THE RECORD, FOR ME TO FIND
4  OUT -- DID YOU NOT BELIEVE YOU HAD A DUTY OF DISCOVERY TO
5  DISCLOSE IT, OR HAD YOU JUST FORGOTTEN ABOUT IT OR WHAT?
6           MR. DEMERTZIS: OF COURSE I'M AWARE OF MY DUTY TO
7  DISCLOSE. I TYPICALLY THINK OF THAT DUTY IN TERMS OF
8  EXCULPATORY EVIDENCE.
9           THE COURT: WELL, THAT'S BRADY. YOU HAVE TO
10 DISCLOSE THAT FOR SURE.
11          MR. DEMERTZIS: I UNDERSTAND. SO THAT FIRST TEST,
12 IN MY MIND CERTAINLY IT WASN'T EXCULPATORY. INASMUCH AS IT
13 WAS THE DEFENDANT'S STATEMENT, I DIDN'T FLESH IT OUT HOW
14 MUCH OF A STATEMENT IT WAS, AND I DID NOT MENTION TO DEFENSE
15 COUNSEL THAT THIS DEMONSTRATION WAS MADE.
16     I REALIZE THAT IT'S MY DUTY TO TURN THAT OVER TO THE
17 DEFENSE PRIOR TO THE WITNESS TESTIFYING, AND IN THE COURSE
18 OF THE TRIAL IT SLIPPED MY MIND. I DID NOT THINK IT WAS NOT
19 MY DUTY. IT SLIPPED MY MIND TO MENTION IT TO DEFENSE
20 COUNSEL. GETTING TO THE PREJUDICE PORTION --
21          THE COURT: I'M JUST TRYING TO FIND OUT IF IT WAS
22 INTENTION OR NOT, AND THE ONLY PERSON THAT CAN TELL ME THAT
23 IS YOU.
24          MR. DEMERTZIS: IF THAT'S THE QUESTION, YOUR
25 HONOR, OF COURSE NOT. I WOULD ERR ON THE SIDE OF DISCLOSING
26 EVERYTHING. IN FACT, I'VE MADE DEFENSE COUNSEL AWARE OF
27 PRIOR CONVICTIONS OF ANOTHER WITNESS IN THIS TRIAL, WHICH
28 THE PENAL CODE DOES NOT REQUIRE ME TO DIVULGE, ERRING ON THE

1  OPPOSED TO THE NEIGHBOR, PERHAPS HE WOULD HAVE MORE EASILY
2  REMEMBERED TO TELL YOU YESTERDAY MORNING, MR. KURTZMAN, OF
3  WHAT HE HAD FOUND OUT.
4       THE FACT OF THE MATTER IS THAT WHEN YOU GET INTO A
5  TRIAL SITUATION, SOMETIMES THERE ARE SLIPS, AND IN MY MIND
6  THIS WAS A MINOR SLIP, IN VIEW OF THE FACT THAT THE
7  DISCOVERY HERE, WHICH WAS NOT GIVEN TO YOU AND WHICH YOU
8  FIRST LEARNED ABOUT WHEN HE TESTIFIED, WAS IN MY MIND NOT
9  MATERIAL ENOUGH TO BE PREJUDICIAL TO YOUR CASE, IN VIEW OF
10 WHAT I'VE HEARD.
11      ALSO IN VIEW, FRANKLY, OF THE OPENING STATEMENT IN
12 WHICH YOU TOLD THE JURY IN ESSENCE THIS WAS GOING TO BE A
13 SELF-DEFENSE CASE.  I WOULD THINK THAT THE WITNESS'S
14 TESTIMONY YESTERDAY WOULD NOT ALTER THAT STRATEGY IN ANY
15 WAY.  YOU'VE GONE ON RECORD WITH THIS JURY TELLING THEM THAT
16 IT'S A SELF-DEFENSE CASE, AT THE VERY OUTSET.
17      GIVEN THE FACT THAT I DON'T BELIEVE THERE'S ANY
18 PREJUDICE BECAUSE OF THAT, GIVEN THE FACT THAT I DON'T THINK
19 THAT THE DISTRICT ATTORNEY VIOLATED 1054 INTENTIONALLY, AND
20 GIVEN THE FACT THAT THE WITNESS WAS SUBJECT TO YOUR FULL
21 EXAMINATION, THE REMEDY THAT YOU SEEK FOR MISTRIAL IS
22 DENIED.
23      I DO NOT BELIEVE YOUR CLIENT HAS BEEN -- HAS SUFFERED,
24 AT THIS POINT AT ANY RATE, AN UNFAIR TRIAL DUE TO WHAT DID
25 NOT HAPPEN YESTERDAY MORNING, THAT IS, YOUR NOT BEING TOLD
26 RIGHT AWAY IN THE MORNING BY MR. DEMERTZIS AS TO WHAT HE HAD
27 FOUND OUT IN A TELEPHONE CALL THE NIGHT BEFORE.  SO I'M
28 DENYING YOUR MOTION.  THANK YOU.

22, lines 9-15), (e) did not remember being inside the apartment (C.T., page 28, lines 12-18), (f) didn't remember a puncture wound occuring (C.T., page 28, lines 5-9), (g) didn't remember seeing a weapon (███ ██, C.T., page 14, lines 14-16), and (h) totally forgives petitioner and doesn't have any hard feelings. (C.T., page 16, lines 7-9)

Given this previous testimony by the only eyewitness to the alleged crime, it's understandable that the prosecution may have believed in a reasonable probability of a different result had it not suppressed the upcoming testimony of prosecution witness Peter Craven in violation of Penal Code § 1054.1(b).

A defendant has a constitutional privilege to obtain from the prosecution evidence material to his guilt or relevant to punishment imposed. Brady v. Maryland, 373 U.S. 83 (1963). Prior statements of a witness that are both material and inconsistent with his anticipated testimony fall within the Brady rule. Kyles v. Whitley, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); U.S. v. Hanna, 55 F.3d 1456 (9th. Cir. 1995)

A prosecutor's duty to reveal such evidence does not depend on a request by the defense. U.S. v. Bagley, 473 U.S. 667, 683, 105 S.Ct. 3375, 3384, 87 L.Ed.2d 481 (1985); Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th. Cir. 1992)

> GROUND THREE: THE PROSECUTOR KNOWINGLY USED PERJURED TESTIMONY OR FAILED TO CORRECT KNOWN FALSE TESTIMONY TO OBTAIN PETITIONER'S CONVICTION. THIS VIOLATED PETITIONER'S RIGHT TO A FAIR TRIAL AS GUARANTEED BY THE U.S. CONSTITUTION AND THE 6th. AND 14th. AMENDMENTS

On May 24, 2004, prosecutor Jim Demertzis deliberately recalled victim Craig Davis on the final day of trial to testify

Petitioner's Testimony of why he entered the bedroom and his attempt to re-enter the living room where the police officers were at.

422

lines 3-25
RT Vol III
Case # EE302496
Sunnyvale, CA.
Superior Court

☾ Note: There are three windows behind the bedroom door that lead outside. See Declaration

```
 1   OR SOLID.  I'M NOT SURE.  IT MAY HAVE BEEN A SOLID ONE.
 2   Q    AT SOME POINT AFTER YOU WENT INTO YOUR BEDROOM --
 3   LET'S BACK UP.  YOU WENT INTO YOUR BEDROOM TO USE THE
 4   BATHROOM?
 5   A    YEAH, I REMEMBER GOING IN THERE INITIALLY TO USE THE
 6   BATHROOM.
 7   Q    DOES YOUR BATHROOM HAVE A DOOR?
 8   A    YES, IT DOES.
 9   Q    DID YOU CLOSE THE BATHROOM DOOR WHEN YOU USED IT?
10   A    I MAY HAVE SWUNG IT CLOSED.  I'M SURE I DIDN'T CLOSE
11   IT ALL THE WAY.
12   Q    WHEN YOU WENT TO THE BEDROOM, DID YOU CLOSE YOUR
13   BEDROOM DOOR?
14   A    YES.
15   Q    WHY DID YOU CLOSE YOUR BEDROOM DOOR IF YOU WERE GOING
16   IN TO USE THE BATHROOM?
17   A    I DON'T KNOW.  I JUST -- I DON'T KNOW.
18   Q    AFTER YOU USED THE BATHROOM, YOU WERE IN YOUR BEDROOM;
19   RIGHT?
20   A    YES.
21   Q    AND AT SOME POINT YOU CAME OUT OF THE BEDROOM?
22   A    I ATTEMPTED TO LEAVE THE BEDROOM, GO OUT TO THE LIVING
23   ROOM.
24   Q    THAT'S MORE ACCURATE.  AT SOME POINT YOU ATTEMPTED TO
25   LEAVE THE BEDROOM.
26   A    FINE.
27   Q    AND WHEN YOU OPEN THE DOOR, IT HIT SOMETHING AND
28   WOULDN'T MOVE ANY MORE?
```

I didn't try to leave the apartment, nor did I try to hide. See lns. 22, 23

DECLARATION

I, the undersigned declare as follows:

I am a citizen of the United States, over the age of 18 years, I am currently incarcerated and my address is:

NAME & ID# Jeff Jay Hancock V-49474

ADDRESS: C.V.S.P.    ASU 133L
P.O. Box 2349
Blythe, CA. 92226

There are three windows behind the bedroom door of Petitioner's apartment on 675 Johanna Avenue #7 which lead to the front yard and Caliente Street which is opposite of the apartment front door.

In re: Ground #8 Improper Flight Instruction

I declare under the penalty of perjury that the foregoing is true and correct.

DATE: March 20, 2008

_Jeff Jay Hancock_
Inmate's Signature

Jeff Jay Hancock V-49474
Inmate's Name & CDC#

```
STATE OF CALIFORNIA   )
                      : ss                    PROOF OF SERVICE BY
COUNTY OF RIVERSIDE   )                       PERSON IN STATE CUSTODY
```

I, Jeff Jay Hancock, the undersigned, certify, and do declare that I am over the age of 18 years, incarcerated at Chuckawalla Valley State Prison, located at Blythe, CA and a party / not a party to the attached foregoing cause of action. On March 20th, 2008 I did serve a true copy of:

Denial and Exception to the Return to the Order to Show Cause

[ ] by depositing it in a prison mail box in a sealed envelope, or [X] by handing it to institutional staff in a sealed envelope, along [ ] with Inmate Trust Account Withdrawal Order Form attached to it requesting that postage be fully prepaid, or [X] with postage affixed thereto for deposit in the United States Mail pursuant to California Code of Regulations Sections 3142 and 3165; addressed to the following:

Office of the Clerk, U.S. District Court for the Northern District of California
1301 Clay St. Suite 400S
Oakland, CA. 94612-5212

Intended place of mailing: U.S. Post Office, at Blythe, California.

I further declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, and belief. Executed on March 20th, 2008

*/s/ Jeff Jay Hancock*
PETITIONER/DECLARANT IN PRO PER